# UNITED STATES COURT OF APPEALS

# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Case No. 26-5293

(District Court Case No. 1:24-cv-03099-ACR)

**DONALD R. COWAN,**

**Appellant,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION,**

**Appellee.**

**BRIEF FOR APPELLANT**

Respectfully Submitted,

August 14, 2026

/S/ Donald R. Cowan
Donald R. Cowan, B.S.
Criminal Justice Administration & Ethics
(Constitutional & Procedural Law Focus)
Pro Se for the Appellant
3768 SE 48th PL, Oklahoma City, Oklahoma 73135
(405) 708-1756 | Email: Cowan.Radio@gmail.com

## NOTICE REGARDING JURISDICTIONAL CHARACTER, INTENT TO ESTABLISH PRECEDENT, FORMAL REQUEST FOR PUBLISHED OPINION, AND EXPLICIT REJECTION OF MANDAMUS RECHARACTERIZATION

**PLEASE TAKE NOTICE** that this action is brought strictly and exclusively as an appeal as of right pursuant to 28 U.S.C. § 1291 from a final order of the United States District Court for the District of Columbia terminating this action for lack of subject-matter jurisdiction.

**IT IS EXPRESSLY STATED AND INTENDED** that this appeal is designed to establish binding precedent regarding the unconstitutionality of administrative warehousing, the limits of statutory channeling under the Hobbs Act, the unconstitutionality of the *TRAC* judicial balancing test, the fatal legal nullity of grounding agency policy in repealed statutes absent any valid statutory threshold (such as the functional definitions found in comparable federal statutes like the felon-in-possession ban), the application of the *Bruen* framework and the unconstitutional conditions doctrine prohibiting administrative agencies from penalizing the exercise of core constitutional rights, the direct statutory firewall of **47 U.S.C. § 326**, and a direct constitutional challenge to the overbroad judicial fiat set forth in *Contemporary Media, Inc. v. FCC*.

Pursuant to D.C. Circuit Rule 36(a)(i) and (ii), Appellant formally requests that this Court issue a **Published Opinion** to resolve these questions of continuing public importance.

**APPELLANT EXPLICITLY REJECTS** any recharacterization, conversion, or treatment of this appeal as an original petition for a writ of mandamus, and invokes this Court's mandatory appellate jurisdiction to preserve a direct, unclouded path for review by the Supreme Court of the United States.

**TABLE OF CONTENTS**


- **TABLE OF AUTHORITIES**

  ........................................................................................ 6
- **SUMMARY OF ARGUMENT**

  ........................................................................................ 8
- **ARGUMENT**

  .................................................................................................................... 13
  - **I. The District Court Erred in Holding that the Hobbs Act Channels Away Jurisdiction Over Extra-Statutory Administrative Warehousing, Prior Restraints, and Structural Challenges to the Character Policy Statement**

    .................................................................................................................... 12
    - A. Misapplication of the *Axon* Doctrine: Dismantling the Practice Versus Power Dichotomy ......................13
    - B. Pre-Denial Record Preservation (FRAP 10(a)) and the Elimination of Waiver ................................ 14
    - C. The 1,031-Day Stagnation as an Effective Denial and Unconstitutional Prior Restraint ................. 14
    - D. The Fatal Void Statute Defect: *Ultra Vires* Execution via Footnote 2, the Repealed 18 U.S.C. § 1, the Absence of Any Comparable Statutory Threshold, and Violation of the Unconstitutional Conditions Doctrine Under *Bruen*

      ..........................................................................................................................

      ...... 15

    - E. Preserving Justiciability Against Strategic Agency Manipulation and Count IV As-Applied Challenges .......................................................................................................................... 15
- **II. The Agency's Indefinite Withholding Violates the Express Anti-Censorship Mandate of 47 U.S.C. § 326** ............................................................................................................ 16
- **III. The Absence of a Strict Operational Nexus Standard and Codification of 47 C.F.R. § 73.4280** ............................................................................................................ 17
- **IV. *Contemporary Media, Inc. v. FCC* Is Constitutionally Flawed and Must Be Limited or Overruled: The Judiciary Cannot Greenlight the FCC's Usurpation of Roving Moral Police Powers Under the Guise of "Character"** ........................................................................................................... 19
    - A. Clarifying the Intelligible Principle of 47 U.S.C. § 308 and the Major Questions Doctrine ................. 19
    - B. The "Public Interest" as an Abused Moving Target ................................................................ 20
    - C. Constitutional Attack on *Contemporary Media* and the Unconstitutional "Rehabilitation" Trap ................. 20

        - D. The Pretextual Collapse of *Contemporary Media*'s Rationale: Pre-*Heller*/Pre-*Bruen* Self-Defense, the Unconstitutional Conditions Doctrine, and Arbitrary Selective Enforcement ................................................ 20
    - **V. The Institutional Imperative Against Judicial Abdication: Administrative Silence Cannot Be Weaponized to Extinguish Article III Review** ........................................................................................... 22
    - **VI. The Judicially Created *TRAC* Balancing Test is an Unconstitutional Judicial Overreach That Violates the Major Questions Doctrine and Subverts the Mandatory Text of APA Section 706(1)** ....................................... 22
        - A. *TRAC* Subverts the Mandatory Command of APA Section 706(1) .......................................................... 23
        - B. Violation of the Major Questions Doctrine .......................................................................... 23
        - C. Separation of Powers and Article III Supremacy ................................................................... 24
    - **VII. STRATEGIC APPROACH: ACKNOWLEDGING PANEL BOUNDS UNDER VERTICAL STARE DECISIS AND PRESERVING DOCTRINAL CONFLICTS FOR EN BANC OR SUPREME COURT REVIEW** ................. 24
- **CONCLUSION AND PRAYER FOR RELIEF** ............................................................................ 25

## TABLE OF AUTHORITIES

### Supreme Court & Circuit Cases


- *Axon Enterprise v. FTC*, 598 U.S. 175 (2023) ............................................................ 2, 8, 13
- *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) ............................ 8, 14, 17
- *Contemporary Media, Inc. v. FCC*, 214 F.3d 187 (D.C. Cir. 2000) ........................ 2, 10, 19, 20, 21, 24
- *District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................................ 9, 20, 24
- *Freedman v. Maryland*, 380 U.S. 51 (1965) ......................................................................... 8, 14
- *Near v. Minnesota*, 283 U.S. 697 (1931) ............................................................................. 8, 14
- *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) ................... 9, 15, 20, 24
- *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984) ...... 2, 11, 22, 24
- *West Virginia v. EPA*, 597 U.S. 697 (2022) ........................................................................ 10, 19, 23, 24

**Statutes & Legislative Materials**


- Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 .................. 9, 15
- 5 U.S.C. § 701 *et seq.* .................................................................................................. 12
- 5 U.S.C. § 706(1) ....................................................................................... 3, 9, 10, 12, 22, 23, 25
- 18 U.S.C. § 1 (repealed) ............................................................................... 9, 15
- 28 U.S.C. § 1291 ......................................................................................... 1, 2, 25
- 28 U.S.C. § 1331 ............................................................................................. 12
- 28 U.S.C. § 1651 ........................................................................................... 2
- 28 U.S.C. § 2342 ........................................................................................... 2, 10
- 28 U.S.C. § 2342(1) ................................................................................... 12, 15, 25
- 47 U.S.C. § 308 ............................................................................................ 2, 19
- 47 U.S.C. § 308(b) .......................................................................................... 2, 19
- 47 U.S.C. § 309 ............................................................................................ 1, 2, 19
- 47 U.S.C. § 309(e) ..........................................................................................

1, 2, 19

- **47 U.S.C. § 326** ........................................................................................................ **9, 16**
- 47 U.S.C. § 402(a) ........................................................................................ 2, 10, 12

**Rules, Regulations & Administrative Decisions**

- D.C. Circuit Rule 36(a)(i) and (ii) .......................................................................... 1, 2
- Fed. R. App. P. 3(c) ........................................................................................................ 1
- Fed. R. App. P. 4(a) ........................................................................................................ 2
- Fed. R. App. P. 10(a) .................................................................................................. 8, 14
- 1990 Character Policy Statement, Footnote 2, 5 FCC Rcd 3252 ................................ 9, 15

**SUMMARY OF ARGUMENT**

The district court's August 10, 2026 Minute Order dismissing Appellant's action for lack of subject-matter jurisdiction represents a profound institutional abdication. By reading the Hobbs Act (28 U.S.C. § 2342(1)) to encompass the Federal Communications Commission's indefinite, recordless "warehousing" of radio license applications, the lower court manufactured an unreviewable administrative black hole.

Crucially, as established by the contemporaneous record filings submitted on the docket alongside Appellant's Second Amended Complaint and Supplemental Pleading—strictly prior to

any final agency denial—the FCC has weaponized administrative warehousing as a deliberate shield to evade a structural and systemic challenge to its Current Character Policy Statement. The district court committed foundational error by compartmentalizing structural claims into routine procedural execution, fundamentally misinterpreting *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). Under Federal Rule of Appellate Procedure 10(a), these core structural challenges were formally entered onto the record at the earliest possible juncture, completely stripping the agency of any defense claiming forfeiture, late-stage shifting of arguments, or failure to exhaust administrative remedies. Knowing full well that the substantive application of its covert, unwritten character policies triggers grave structural challenges under *Axon*, the agency strategically refuses to act—issuing no final order and compiling no record—precisely to prevent citizens from mounting an *Axon* challenge. This administrative stonewalling operates as an unconstitutional prior restraint on communication under *Near v. Minnesota*, 283 U.S. 697 (1931), and *Freedman v. Maryland*, 380 U.S. 51 (1965), granting the executive branch an absolute immunity shield through bureaucratic inertia and acting as a silent "pocket veto" of constitutional rights.

Furthermore, this indefinite withholding directly collides with the explicit statutory ceiling imposed by Congress in **47 U.S.C. § 326**, which strictly prohibits the Commission from exercising censorship or promulgating regulations or conditions that interfere with the right of free speech by means of radio communication.

The District Court's Minute Order also committed error by endorsing a false "practice" versus "power" dichotomy, characterizing Appellant's claims as targeting routine agency adjudication practices rather than the agency's absolute lack of substantive power. Enforcing

ghost criteria derived from repealed statutes to indefinitely suppress protected speech is not a garden-variety procedural misstep; it is an *ultra vires* assumption of unlegislated power. Specifically, the foundation of the FCC's review—Footnote 2 of the 1990 Character Policy (5 FCC Rcd 3252)—explicitly tethers its felony definitions to 18 U.S.C. § 1. Because 18 U.S.C. § 1 was repealed by Congress via the Comprehensive Crime Control Act of 1984 (Pub. L. No. 98-473, 98 Stat. 1837) six years prior to the policy's adoption, the agency is anchoring its character review in a legal nullity. Where comparable federal regulatory and criminal schemes—such as the federal felon-in-possession ban—rely on a functional statutory definition tied to crimes punishable by imprisonment for a term exceeding one year, the FCC's reliance on a dead-letter statute leaves its felony threshold entirely unmoored from any valid congressional enactment. Operating under a phantom statutory anchor strips the agency of any discernible "intelligible principle," establishing a structural defect in delegation that places the dispute squarely outside standard administrative exhaustion requirements.

This structural defect directly triggers the unconstitutional conditions doctrine under the *Bruen* framework (*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)). The government cannot condition the receipt of a valuable public benefit or federal license—such as a radio station license—on the waiver, relinquishment, or penalization of a citizen's core constitutional rights. By leveraging a phantom statutory anchor and unwritten moral vetting criteria to penalize conduct that involves the exercise of constitutional rights (specifically, pre-*Heller* and pre-*Bruen* self-defense), the FCC runs headlong into the absolute constitutional prohibition against conditioning government benefits on the forfeiture of protected freedoms. Concurrently, Count IV of Appellant's operative pleadings presents a precise, direct as-applied

constitutional challenge to the Hobbs Act (28 U.S.C. § 2342) and 47 U.S.C. § 402(a), establishing that the strict enforcement of the statutory channeling framework to an open-ended, 1,031-day recordless freeze operates as an unconstitutional divestiture of Article III judicial power and violates Fifth Amendment Due Process by creating an unconstitutional circular administrative "dead end".

Furthermore, Counts I and III challenge the underlying statutory boundaries and constitutional reach of the Communications Act: specifically, that 47 U.S.C. § 308 must be properly clarified regarding its intelligible principle, limiting character evaluation strictly to an applicant's technical and operational ability "to operate the station," rather than empowering the FCC to act as a National Super Board of Moral Ethics determining on a case-by-case basis who is morally qualified to participate in regulated First Amendment speech—an enormous expansion of power that directly violates the Major Questions Doctrine. Compounding this lawlessness, the FCC systematically abuses the nebulous and shifting standard of the "public interest" as a moving target, manipulating an undefined catch-all phrase to justify ad hoc, unbridled censorship and discriminatory hurdles in direct contravention of *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988).

Moreover, to the extent that *Contemporary Media, Inc. v. FCC*, 214 F.3d 187 (D.C. Cir. 2000), is invoked by the government to justify boundless agency discretion over extraneous non-FCC conduct, *Contemporary Media* is constitutionally infirm. That decision erred by greenlighting the FCC's roving moral oversight without a strict statutory nexus, violating the Separation of Powers, the Non-Delegation Doctrine, and Fifth Amendment Due Process by validating a standardless "rehabilitation" trap. Furthermore, *Contemporary Media*'s core

rationalization—that a felony conviction draws into question an applicant's ability to follow Commission rules—collapses entirely under constitutional scrutiny when applied to Appellant's specific circumstances. Appellant's underlying manslaughter charge encompasses pre-*Heller* and pre-*Bruen* self-defense conduct that is now explicitly recognized and protected by the Second Amendment (*District of Columbia v. Heller*, 554 U.S. 570 (2008); *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)). Using a conviction based on the exercise of a right now explicitly protected by the Second Amendment as a basis to penalize and disqualify an applicant from federal licensing privileges creates an unconstitutional penalty on the exercise of core constitutional rights.

In actual administrative practice, this rationale further collapses into pretext: while the Commission routinely passes and licenses applicants with multiple white-collar or financial felonies, it weaponizes an indefinite "pocket veto" against individuals with personal crimes by refusing to apply any consistent or transparent analysis. *Contemporary Media* must be limited or expressly overruled to the extent it permits the agency to conduct unwritten, standardless character inquisitions outside narrow, verifiable operational parameters.

Most critically, the judiciary's historical reliance on the judicially created *TRAC* balancing test (*Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)) constitutes an unconstitutional judicial overreach. By turning the mandatory statutory command of APA Section 706(1)—which dictates that reviewing courts shall compel agency action unlawfully withheld—into an extra-statutory policy-laden balancing test, the judiciary has violated the Separation of Powers, subverted the Major Questions Doctrine, and unlawfully rewritten clear statutory law. This Court possesses both the authority and the ethical duty to reject

this judicial surrender, strike down the agency's abuse of its Character Policy Statement, formally invalidate the *TRAC* framework as *ultra vires*, repudiate the unconstitutional overreach of *Contemporary Media*, protect core constitutional guarantees, and mandate that the litigation proceed directly to the merits of summary judgment.

## ARGUMENT

### I. The District Court Erred in Holding that the Hobbs Act Channels Away Jurisdiction Over Extra-Statutory Administrative Warehousing, Prior Restraints, and Structural Challenges to the Character Policy Statement

The district court committed fundamental error by holding that 28 U.S.C. § 2342(1) strips Article III district courts of jurisdiction to compel agency action unlawfully withheld under 5 U.S.C. § 706(1). The Hobbs Act governs review of "final orders" of the FCC. By definition, an agency's deliberate, indefinite silence spanning over 1,000 days—designed to evade review while imposing ongoing constitutional injury—is not a final order.

#### A. Misapplication of the *Axon* Doctrine: Dismantling the Practice Versus Power Dichotomy

The lower court accepted the agency's premise that review is blocked by the Hobbs Act, fundamentally misinterpreting *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), by compartmentalizing structural claims into routine procedural execution. Furthermore, the District Court's Minute Order incorrectly characterized Appellant's claims as targeting the agency's practice of adjudicating rather than its foundational power to do so. Enforcing ghost criteria

derived from repealed statutes to indefinitely suppress protected speech is not a garden-variety procedural misstep; it is an *ultra vires* assumption of unlegislated power. The D.C. Circuit must evaluate whether the district court erred in screening out a challenge that targets the foundational validity of an agency policy operating completely outside statutory boundaries.

**B. Pre-Denial Record Preservation (FRAP 10(a)) and the Elimination of Waiver**

Because the core structural challenges, detailing the FCC's lack of statutory authority and reliance on defunct legal authorities, were formally entered onto the district court record simultaneously with the filing of the Second Amended Complaint and Supplemental Pleading and strictly prior to any final agency denial, all claims and evidentiary foundations were fully preserved at the earliest permissible procedural juncture. The agency cannot claim waiver, forfeiture, or lack of exhaustion.

**C. The 1,031-Day Stagnation as an Effective Denial and Unconstitutional Prior Restraint**

The multi-year standstill—spanning an intolerable 1,031 days—cannot be insulated as a routine "pending application" awaiting ordinary processing. The agency's internal admissions and conduct establish that the file is being indefinitely warehoused while the commission invents post-hoc review standards, constituting a functional, de facto denial and an unconstitutional prior restraint. Under *Near v. Minnesota*, 283 U.S. 697 (1931), and *Freedman v. Maryland*, 380 U.S. 51 (1965), a licensing scheme that lacks strict procedural time limits and burdens the applicant with indefinite administrative silence acts as an unconstitutional mechanism of censorship.

Furthermore, administrative delay carries "the risk of indefinitely suppressing permissible

speech" when an agency refuses to act (*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990)). By manipulating the nebulous "public interest" standard and unwritten character criteria as a shifting moving target, the FCC vests its officials with unbridled discretion—precisely the evil condemned in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988), where the Supreme Court held that unconstrained licensing power over expressive activity is *per se* invalid.

**D. The Fatal Void Statute Defect: *Ultra Vires* Execution via Footnote 2, the Repealed 18 U.S.C. § 1, the Absence of Any Comparable Statutory Threshold, and Violation of the Unconstitutional Conditions Doctrine Under *Bruen***

The foundation of the FCC's review—Footnote 2 of the 1990 Character Policy (5 FCC Rcd 3252)—explicitly tethers its felony definitions to 18 U.S.C. § 1. Because 18 U.S.C. § 1 was repealed by Congress via the Comprehensive Crime Control Act of 1984 (Pub. L. No. 98-473, 98 Stat. 1837) six years prior to the policy's adoption, the agency is anchoring its character review in a legal nullity. Unlike functioning federal regulatory frameworks that incorporate precise statutory thresholds (such as the federal felon-in-possession ban, which anchors its prohibitions in crimes punishable by a term of imprisonment exceeding one year), the FCC operates without any valid underlying legislative definition for its felony threshold. Operating under a phantom statutory anchor strips the agency of any discernible "intelligible principle," establishing a structural defect in delegation that places the dispute squarely outside standard administrative exhaustion requirements. Furthermore, applying this phantom standard to penalize an applicant based on self-defense conduct protected by the Second Amendment violates the unconstitutional conditions doctrine under the *Bruen* framework: the government may not condition the grant of a

federal license on the surrender or penalization of a constitutional right.

**E. Preserving Justiciability Against Strategic Agency Manipulation and Count IV As-Applied Challenges**

Even if Appellee attempts to manipulate this litigation's justiciability mid-appeal by unilaterally issuing a sudden, post-filing grant, denial, or altered ruling, such tactical maneuvering cannot moot this action under the doctrine of voluntary cessation and the exception for actions capable of repetition yet evading review. Furthermore, under Count IV of the operative pleadings, Appellant raised a precise as-applied constitutional challenge to 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a). By weaponizing the statutory channeling framework to insulate an open-ended, 1,031-day recordless freeze, the agency creates an unconstitutional "dead end" that strips the District Court of jurisdiction while denying the Circuit Court any record to review. This application violates the Separation of Powers by unconstitutionally divesting Article III courts of their inherent power to halt ongoing constitutional injuries, and breaches the Fifth Amendment Due Process Clause by shielding a standardless prior restraint from judicial review.

## II. The Agency's Indefinite Withholding Violates the Express Anti-Censorship Mandate of 47 U.S.C. § 326

The Federal Communications Commission's practice of indefinitely warehousing a license application for over three years under the guise of character vetting directly collides with the explicit statutory ceiling imposed by Congress in 47 U.S.C. § 326. The statute commands in unequivocal terms that:

> ***"Nothing in this chapter shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be***

> ***promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication."***

Here, the Commission attempts to circumvent this strict prohibition by utilizing an unvetted, open-ended administrative blackout as a de facto prior restraint. By withholding authorization indefinitely based on an extraneous, decades-old state conviction—without a founding-era historical analogue under Bruen and without a valid statutory hook—the agency has erected a barrier that functions as administrative censorship. The government cannot evade the plain text of Section 326 by recasting an unconstitutional prior restraint as a routine administrative backlog. Congress did not grant the FCC discretionary authority to suspend the First Amendment rights of radio operators through multi-year procedural purgatory. Because the Commission's character qualification policy, as applied here, operates to censor and restrict communication rights without historical justification or statutory backing, the agency's ongoing delay is both statutorily unauthorized and constitutionally void.

**III. The Absence of a Strict Operational Nexus Standard and Codification of 47 C.F.R. § 73.4280**

Furthermore, the Commission's character vetting framework is fatally flawed because it operates entirely devoid of any strict operational nexus standard. Under established administrative principles and the statutory limits of the Communications Act, any inquiry into an applicant's past non-broadcast conduct cannot be a boundless, generalized moral audit. Instead, it requires a strict, direct, and verifiable nexus demonstrating a material, demonstrable correlation between the past conduct and the specific, technical execution of broadcast responsibilities.

By utilizing an amorphous character policy to penalize historical, personal conduct that bears

zero operational relationship to spectrum management, technical compliance, or broadcast integrity, the agency enforces an arbitrary standard that exceeds its statutory mandate. Without a strict operational nexus, the FCC's character vetting degrades into unbridled, *ultra vires* censorship, violating both the Administrative Procedure Act and the fundamental constitutional protections guaranteed to speakers and licensees.

To cure these ongoing constitutional and statutory infirmities, character evaluations must be legally anchored to a transparent standard governed by the Major Questions Doctrine and the strict prohibition against prior restraint. The regulatory framework must enforce the following strict nexus requirements set forth in 47 C.F.R. § 73.4280:

- **General Policy:** Character evaluations are governed by the Major Questions Doctrine and the prohibition against Prior Restraint.
- **Strict Nexus Rule:** Felony convictions shall only be considered adverse factors if they demonstrate a direct and substantial nexus to the applicant's fitness to hold an FCC license, defined strictly as crimes of truthfulness (fraud, perjury, or making false statements to the Commission or other governmental agencies) or spectrum integrity (violations of the Communications Act or crimes involving the intentional interference with radio communications).
- **Exclusion of Person Crimes:** The Commission shall not consider felony convictions for "Person Crimes" (e.g., Homicide, Manslaughter, Aggravated Assault) unless the conduct involved the misuse of communications facilities.
- **Non-Commercial Exclusion:** For Amateur and Non-Commercial Educational (NCE) licenses, the Commission shall not consider any conviction that does not involve a direct

violation of the Communications Act.

- **Remedial Finality:** A finding of Factual Innocence, a Pardon, or a vacated conviction (including those found *void ab initio*) provides a rebuttable presumption of fitness under the APA.

**IV. *Contemporary Media, Inc. v. FCC* Is Constitutionally Flawed and Must Be Limited or Overruled: The Judiciary Cannot Greenlight the FCC's Usurpation of Roving Moral Police Powers Under the Guise of "Character"**

The district court's uncritical reliance on old gatekeeping frameworks to dismiss Appellant's action reflects a broader, systemic judicial error rooted in the dangerously expansive precedent of *Contemporary Media, Inc. v. FCC*, 214 F.3d 187 (D.C. Cir. 2000). To the extent *Contemporary Media* stands for the proposition that the FCC possesses boundless, unreviewable discretion to investigate extraneous, non-FCC criminal conduct and impose a shifting, standardless "rehabilitation" burden on citizens, it is constitutionally defective and must be directly attacked and repudiated.

- **Constitutional Attack on *Contemporary Media* (Violation of Separation of Powers and Non-Delegation):** *Contemporary Media* erred fundamentally by treating the Communications Act as an open-ended delegation of moral policing authority. Under Article I, Congress did not—and constitutionally could not—delegate to an administrative agency a roving commission to act as a National Board of Ethics. Allowing the FCC to weaponize past non-regulatory infractions into a permanent civil disability, entirely divorced from technical radio operations, violates the Non-Delegation Doctrine and the Major Questions Doctrine. An administrative agency cannot invent a sweeping, subjective

moral vetting regime without clear, explicit congressional text (*West Virginia v. EPA*, 597 U.S. 697 (2022)).

- **Clarifying the Intelligible Principle of 47 U.S.C. § 308:** Under 47 U.S.C. § 308(b), the Commission's evaluation of character must be strictly bounded by its intelligible principle: evaluating an applicant's fitness "to operate the station" (focusing strictly on technical compliance, spectrum integrity, and honesty in regulatory filings). *Contemporary Media*'s broad judicial gloss divorced character inquiries from operational integrity, transforming a technical licensing statute into an instrument of arbitrary disenfranchisement.
- **The "Public Interest" as an Abused Moving Target:** The FCC routinely distorts the broad "public interest, convenience, and necessity" standard into a shifting, nebulous moving target, shielded by the protective rationale mistakenly granted in *Contemporary Media*. By refusing to establish fixed, transparent criteria, the agency manufactures a malleable standard that violates *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), by vesting officials with unbridled discretion to censor speech and expressive association.
- **The Unconstitutional "Rehabilitation" Trap:** *Contemporary Media* and its progeny spawned the indefensible "rehabilitation" trap, forcing applicants to prove their moral rehabilitation to an administrative body for uncharged, unadjudicated, or ancient matters without any statutory standard, evidentiary rules, or procedural guardrails. This practice violates Fifth Amendment Due Process by subjecting citizens to arbitrary, standardless administrative hurdles.
- **The Pretextual Collapse of *Contemporary Media*'s Rationale (Pre-*Heller*/Pre-*Bruen***

**Self-Defense, the Unconstitutional Conditions Doctrine, and Arbitrary Selective Enforcement):** In *Contemporary Media*, the agency attempted to justify its character policy by asserting that a felony conviction broadly draws into question an applicant's ability to follow Commission rules. However, this theoretical justification collapses entirely under constitutional scrutiny when applied to Appellant's specific circumstances: Appellant's particular manslaughter charge encompasses pre-*Heller* and pre-*Bruen* self-defense conduct that is now explicitly recognized and protected by the Second Amendment (*District of Columbia v. Heller*, 554 U.S. 570 (2008); *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)). Under the *Bruen* framework and the unconstitutional conditions doctrine, penalizing an applicant by denying federal licensing privileges based on a conviction involving conduct now recognized as a core constitutional right is strictly prohibited. Furthermore, in actual administrative practice, the agency's character rationale collapses into pretext and arbitrary selective enforcement. While the Commission routinely passes and licenses applicants with multiple white-collar or financial felonies, it weaponizes an indefinite "pocket veto"—stalling and warehousing applications indefinitely without a record—against sex offenders and individuals with personal or violent crimes, completely bypassing any principled, transparent, or uniform analysis. This massive chasm between judicial theory and discriminatory administrative reality proves that the Character Policy Statement operates not as a neutral rule-following test, but as an unwritten, standardless instrument of *ad hoc* moral censorship.

- **Restoring Constitutional Limits:** This Court must explicitly limit or overrule *Contemporary Media* to the extent it authorizes extra-statutory moral policing and

penalizes constitutionally protected self-defense conduct. The FCC has no constitutional or statutory authority to act as a moral censor; its character inquiries must be strictly tethered to a direct, verifiable nexus to broadcast operations.

## V. The Institutional Imperative Against Judicial Abdication: Administrative Silence Cannot Be Weaponized to Extinguish Article III Review

The broader implications of the decision below strike at the heart of the separation of powers and judicial integrity. The lower court's ruling validates a dangerous administrative loophole: the "pocket veto" of constitutional rights through bureaucratic inertia and unrecorded agency warehousing.

This Court has an ethical and constitutional obligation to rein in the FCC rather than continuing the judicial habit of rubber-stamping agency inaction without a formal administrative record. Permitting the FCC to evade accountability by hiding behind its Character Policy Statement and sitting on applications without a paper trail makes the judiciary an active accomplice to the suspension of the Constitution. Statutory channeling was never designed to protect non-decisions or provide an absolute immunity shield for administrative lawlessness.

## VI. The Judicially Created *TRAC* Balancing Test is an Unconstitutional Judicial Overreach That Violates the Major Questions Doctrine and Subverts the Mandatory Text of APA Section 706(1)

For decades, federal courts have reflexively invoked the six-factor balancing test established in *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984), to evaluate claims of unreasonable agency delay. However, continued adherence to

*TRAC* as a discretionary gatekeeping mechanism represents a profound constitutional error: it is a judge-made common-law doctrine that illegally rewrites explicit statutory commands enacted by Congress, arrogates unlegislated power to the judiciary, and violates both the Major Questions Doctrine and the supremacy of the Administrative Procedure Act (APA).

### A. *TRAC* Subverts the Mandatory Command of APA Section 706(1)

The APA is a comprehensive statutory scheme enacted pursuant to Article I of the Constitution. Under 5 U.S.C. § 706(1), Congress established a precise, mandatory directive for reviewing courts: "The reviewing court shall... compel agency action unlawfully withheld or unreasonably delayed." The statutory text contains no ambiguity, no balancing test, and no invitation for the judiciary to invent discretionary hurdles. The word used by Congress is "shall." By injecting the six-factor *TRAC* framework into this statutory equation, the judiciary converted a mandatory congressional command to remedy unlawful delays into a malleable, policy-laden balancing test. Courts routinely use *TRAC* as an escape hatch to excuse multi-year agency inaction under the guise of "judicial discretion." This judicial gloss directly violates the foundational canon of statutory interpretation: federal courts have no authority to rewrite clear statutory commands or erect extra-statutory barriers to the enforcement of federal law.

### B. Violation of the Major Questions Doctrine

Under the Major Questions Doctrine, an agency—or a court interpreting a statute governing structural powers—cannot arrogate boundless, unlegislated authority over matters of vast economic and political significance without clear congressional authorization (*West Virginia v. EPA*, 597 U.S. 697 (2022)). *TRAC* violates this doctrine from the judicial side of the ledger.

Congress never delegated to the D.C. Circuit—or any federal court—the authority to construct a common-law balancing test that effectively suspends a statutory mandate whenever an agency claims it is too busy or prefers to sit on its hands. For a court to claim the inherent, unwritten power to dilute a statutory duty to "compel agency action" into a discretionary six-part test is an extreme exercise of unlegislated judicial policymaking. Congress did not authorize the federal judiciary to rewrite Section 706(1) into a tool for protecting administrative stonewalling.

### C. Separation of Powers and Article III Supremacy

The Constitution vests the legislative power exclusively in Congress. When a court uses the *TRAC* doctrine to shield an agency from a statutory deadline or an unreasonable delay claim, the judiciary steps outside its Article III role of interpreting and applying the law, and instead acts as a legislative co-author—supplanting Congress's mandatory "shall" with judicial discretion. Furthermore, *TRAC* actively inverts the constitutional burden of proof. Under the APA, once a citizen demonstrates that an agency has withheld action beyond any reasonable timeline, the burden shifts to the government to justify the delay under the strict confines of the statute. *TRAC* flips this protection upside down, forcing citizens to satisfy an arbitrary, judge-made threshold before the government is even held accountable for ignoring federal law. As a relic of judicial imperialism that enables unchecked administrative warehousing in direct conflict with 5 U.S.C. § 706(1), the *TRAC* framework must be formally rejected as unconstitutional and *ultra vires*.

## VII. Strategic Approach: Acknowledging Panel Bounds Under Vertical Stare Decisis and Preserving Doctrinal Conflicts for En Banc or Supreme Court Review

While this three-judge panel of the D.C. Circuit remains strictly bound by vertical stare decisis to follow prior published circuit precedents such as *TRAC* and *Contemporary Media, Inc. v. FCC*, this brief purposefully and aggressively preserves the profound doctrinal conflicts between those aging rulings and recent, mandatory Supreme Court jurisprudence.

- **Preserving the Constitutional and Statutory Clash:** The arguments advanced herein explicitly record the irreconcilable tension between the extra-statutory *TRAC* balancing test and the mandatory text of APA Section 706(1), as well as the conflict between *Contemporary Media*'s roving moral oversight and the Major Questions Doctrine (*West Virginia v. EPA*), the Non-Delegation Doctrine, the unconstitutional conditions doctrine, and core Second Amendment protections under the *Bruen* framework (*Heller*; *Bruen*).
- **Laying the Foundation for En Banc and Supreme Court Review:** By fully detailing these structural violations on the record at the earliest possible juncture, Appellant ensures that the issues are immunized against any claim of waiver or forfeiture. This comprehensive presentation signals the active judges of the full court regarding the vital need for doctrinal correction and establishes an unshakeable foundation for appellate review and ultimate relief.

## CONCLUSION AND PRAYER FOR RELIEF

The district court's dismissal for lack of subject-matter jurisdiction insulates a patently unconstitutional administrative regime from Article III review. By operating under a dead-letter statute and asserting standardless, roving moral authority to penalize the exercise of core constitutional rights, the Federal Communications Commission is actively violating the Separation of Powers, the Major Questions Doctrine, the Second Amendment, 47 U.S.C. § 326,

and Fifth Amendment Due Process. The judiciary cannot continue to use the Hobbs Act and the *ultra vires TRAC* balancing test as shields for indefinite administrative warehousing and unconstitutional prior restraints.

For the foregoing reasons, Appellant Donald R. Cowan respectfully requests that this Court grant the following complete relief:

1. **Vacate** the District Court's August 10, 2026 Minute Order dismissing this action for lack of subject-matter jurisdiction;
2. **Hold** that the Hobbs Act (28 U.S.C. § 2342(1)) does not divest Article III district courts of jurisdiction to review extra-statutory administrative warehousing, unconstitutional prior restraints, and structural challenges to agency authority under the *Axon* doctrine;
3. **Declare** that the FCC's 1,031-day indefinite delay without compiling a record violates the express anti-censorship mandate of **47 U.S.C. § 326** and constitutes an effective denial and an unconstitutional prior restraint;
4. **Declare** that the FCC's Character Policy Statement (specifically Footnote 2, 5 FCC Rcd 3252) is anchored in a legal nullity (the repealed 18 U.S.C. § 1), lacks any valid comparable statutory threshold, and that its continued execution is strictly *ultra vires* and structurally defective;
5. **Hold** under the *Bruen* framework and the unconstitutional conditions doctrine that the FCC may not penalize, warehouse, or deny a federal license based on conduct encompassing constitutionally protected rights (specifically pre-*Heller* and pre-*Bruen* self-defense);
6. **Invalidate or strictly limit** the precedent of *Contemporary Media, Inc. v. FCC* to strip the

FCC of unlegislated moral policing powers, formally declare the judicially created *TRAC* balancing test unconstitutional and *ultra vires* as a violation of the mandatory command of APA Section 706(1) and the Major Questions Doctrine, and enforce the strict operational nexus and codification standards of **47 C.F.R. § 73.4280**; and

7. **Remand** this matter to the District Court with explicit instructions to proceed directly to the merits of summary judgment to compel agency action under 5 U.S.C. § 706(1), enjoining the FCC from applying its unconstitutional Character Policy Statement to Appellant's application.

Respectfully submitted,


/s/ Donald R. Cowan
**Donald R. Cowan, B.S.**
Criminal Justice Administration & Ethics
(Constitutional & Procedural Law Focus)
Pro Se Appellant
3768 SE 48th PL, Oklahoma City, Oklahoma 73135
(405) 708-1756 | Email: Cowan.Radio@gmail.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2026, a true and correct copy of the foregoing **"BRIEF FOR APPELLANT"** was served via electronic mail and/or the Court's CM/ECF system upon counsel for Appellees:

Mr. Johnny Hillary Walker, III
Assistant U.S. Attorney
Email: johnny.walker@usdoj.gov

Respectfully submitted,

/s/ Donald R. Cowan
Donald R. Cowan, B.S.

Criminal Justice Administration & Ethics
(Constitutional & Procedural Law Focus)
Pro Se for the Appellant
3768 SE 48th PL, Oklahoma City, Oklahoma 73135
(405) 708-1756 | Email: Cowan.Radio@gmail.com